# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 346 | DATE | 10/9/2003 |
| CASE TITLE | Spitzer vs. Pate | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing set for 11/6/03 at 9:00 a.m. For the reasons stated in the attached memorandum opinion and order, plaintiff's motion for summary judgment is granted [16-1]. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 1 0 2003 date docketed | 27 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MF | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY SPITZER, in his capacity as Executor of the Estate of Milton J. Spitzer, Deceased | ) ) ) ) | **DOCKETED** OCT 1 0 2003 |
| Plaintiff, | ) ) | |
| v. | ) ) | No: 03 C 346 |
| BILLY ROY PATE, | ) ) | Judge John W. Darrah |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Barry Spitzer ("Spitzer"), acting in his capacity as Executor of the Estate of Milton J. Spitzer ("the Estate"), filed suit against Defendant, Billy Roy Pate ("Pate"). The Estate alleges a breach of contract and unjust enrichment by Pate. Presently before the Court is the Estate's Motion for Summary Judgment. For the reasons that follow, the Estate's Motion for Summary Judgment is granted.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of

the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997)).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits, are as follows.

2

In July 1998, Pate, Eric Spitzer, and Spitzer, individually, (collectively the "Borrowers") jointly borrowed $590,000 from the First National Bank of Blue Island ("the Bank").[1] Pl.'s 56.1 ¶ 4. On July 1, 1998, the Borrowers jointly executed a Promissory Note. Pl.'s 56.1 ¶ 4. The Borrowers used two Merrill Lynch cash management accounts owned by the Estate as collateral for the loan. Pl.'s 56.1 ¶¶ 4-5; Def.'s 56.1 ¶ 3. Thereafter, on July 11, 1998, the Borrowers entered into a Payment and Contribution Agreement in favor of the Estate. Pl.'s 56.1 ¶ 6. The agreement required each of the Borrowers, including Pate, to repay the Estate one-third of all losses incurred by the Estate arising out of the Promissory Note. Pl.'s 56.1 ¶¶ 7-9.

The Borrowers and the Bank, however, agreed to substitute collateral on October 11, 1998. Def.'s 56.1 ¶ 8. Instead of using the Merrill Lynch cash management accounts, the Borrowers substituted as collateral an "Equitable Accumulator" account, issued by the Equitable Life Assurance Society of the United States ("the Annuity Contract"). Def.'s 56.1 ¶ 8. Although the Annuity Contract was issued in Spitzer's name, he held it in his capacity as Executor and Trustee of the Estate. Pl.'s 56.1 ¶ 13; Pl.'s Ex. C, Spitzer Aff. ¶ 4.

On February 4, 2002, the Bank declared the Borrowers in default and demanded an immediate repayment on the Promissory Note. Pl.'s 56.1 ¶ 10. At that time, Pate did not pay his one-third share to the Bank. Pl.'s 56.1 ¶ 11. Pursuant to an agreement dated March 28, 2002, the Bank agreed to accept a payment of $506,633.93 on or before April 25, 2002, in full satisfaction of the note. Pl.'s 56.1 ¶ 12.

---

[1] The First National Bank of Blue Island is now known as Great Lakes Bank. For the purposes of this motion, these two entities are synonymous. Pl.'s 56.1 ¶ 4.

On or about April 18, 2002, the Bank accepted payment of the Annuity Contract as a release for the Promissory Note. Pl.'s 56.1 ¶ 13. The value of the Annuity Contract at that time was $487,303.24. Pl.'s 56.1 ¶ 13. To liquidate the contract, however, Equitable assessed a surrender charge of $41,618.49; thus, the cash surrender value that was assigned to the Bank was $445,684.75.

Pate, though, has not repaid any of his one-third share, amounting to $162,434.41. Pl.'s 56.1 ¶¶ 14-15. The terms of the Promissory Note also made Pate liable for interest on any unpaid amounts at the rate of five percent (5%) plus the prime rate of interest announced by the Bank. Pl.'s 56.1 ¶ 16. As set forth in the note, the Bank's prime rate is the highest prime rate published in the *Wall Street Journal's* "Money Rates" table. From July 16, 2002, until November 6, 2002, the published rate was 4.75% per annum. From November 7, 2002, to the present, the prime rate has been 4.25% per annum. Pl.'s 56.1 ¶ 17.

## ANALYSIS

The only issue the parties dispute in this Motion is whether the Estate or Spitzer, individually, owned the collateral used to pay the Promissory Note. "An adequate complaint based on breach of contract must allege the evidence of a contract, plaintiff's performance of all contractual conditions required of him, facts of defendant's breach and the existence of damages as a consequence thereof." *Berg & Assocs. v. Nelson Steel & Wire Co*, 580 N.E.2d 1198, 1203 (Ill. App. Ct. 1991) (citing *Bartlett Bank & Trust Co. v. McJunkins*, 497 N.E.2d 398, 405 (Ill. 1986)). A plaintiff must prove each and every element of its case to win as the movant on summary judgment. *See, e.g., Evans v. Lopez*, 2000 WL 631357, at * 12 (N.D. Ill. May 12, 2000).

4

No issue of material fact exists as to whether the Estate owned the collateral used to pay the Promissory Note. The original collateral, the Merrill Lynch cash management accounts, was owned by the Estate. Thereafter, the Borrowers substituted the Annuity Contract as collateral for the Promissory Note.

While Spitzer may have signed the Annuity Contract in his own name, his affidavit makes clear that he held it as Executor and Trustee of the Estate. Pate argues that some other party, and not the Estate, owned the Annuity Contract; therefore, he is not liable to the Estate because the Estate never performed its contractual obligation. However, Pate has failed to submit any affidavits, depositions, interrogatories, admissions, or other specific evidence to support his contention that the Estate did not own the Annuity Contract. Pate is unable to raise a genuine issue of material fact on this issue; therefore, he is bound by the terms of the Payment and Contribution Agreement.

These terms clearly indicate that Pate is liable for one-third of all losses incurred by the Estate arising out of the Promissory Note. Pate has not paid any of the principal, amounting to $162,434.41, or the interest to the Estate. For the 114 days between (and including) July 16 and November 6, 2002, the daily interest charge was $43.38 per day, or a total of $4,945.32. For the 205 days between November 7, 2002 and May 30, 2003, the daily interest charge was $41.16, or a total of $8,437.80. In addition, from May 31, 2003 until the date of the entry of judgment, interest accrues at a rate of $41.16 per day. Based on these figures, Pate owes the Estate $175,817.53, plus the daily interest from May 31, 2003 until the date of the entry of judgment.

5

## CONCLUSION

For the foregoing reasons, the Estate's Motion for Summary Judgment is granted. The Estate has fourteen days from the date of this opinion to submit a final statement of all charges Pate owes the Estate consistent with this opinion. Pate will then have seven days to respond. Neither side should discuss the merits of this case in these submissions.

Dated: October 9, 2003

JOHN W. DARRAH
United States District Judge